IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:24-CT-3054-FL

| | | |
|---|---|---|
| ANTOINE A. DEBOLD,<br><br>Plaintiff,<br><br>v.<br><br>BRANDON STOCKS, LEKISHA WILLIAMS, DEBRIANT EVERETT, and JANE/JOHN DOE,<br><br>Defendants. | ) | ORDER |

This matter is before the court on motions for summary judgment filed by defendant Brandon Stocks ("Stocks") (DE 40) and defendants DeBriant Everett ("Everett") and Lekisha Williams ("Williams") (DE 51) under Federal Rule of Civil Procedure 56. Plaintiff responded to neither motion. Also before the court are unopposed motions to seal filed by defendant Stocks (DE 47) and defendants Everett and Williams (DE 58). In this posture, the issues raised are ripe for ruling.

**STATEMENT OF THE CASE**

Plaintiff, a state inmate proceeding pro se, commenced this action by filing complaint March 4, 2024, asserting civil rights violations under 42 U.S.C. § 1983 and claims under North Carolina state law. (DE 1). Plaintiff filed amended complaint August 2, 2024. (DE 11). After frivolity review, the court allowed plaintiff to proceed with individual capacity claims under the Eighth Amendment for excessive force, failure to protect, and deliberate indifference. The court

also allowed plaintiff to proceed on state-law claims for intentional infliction of emotional distress, dereliction of duty, and abuse of power.

In his motion, defendant Stocks argues that, based on the record evidence produced through discovery, the undisputed record shows that he did not violate plaintiff's constitutional right against the use of excessive force under the Eighth Amendment. In support, defendant Stocks submits a memorandum of law, statement of material facts, and appendix of exhibits including: 1) defendant Stocks' declaration; 2) video recording of the incident; 3) statements from defendants Everett and Williams, and 4) plaintiff's disciplinary infraction.

By separate motion, defendants Everett and Williams also move for summary judgment, arguing that the undisputed record evidence shows that defendants Everett and Williams did not violate plaintiff's constitutional rights or North Carolina state law, and that they are entitled to qualified and public official immunity. In support, they submit a memorandum of law, statement of material facts, and appendix of exhibits including: 1) declaration of counsel; 2) plaintiff's offender public information and infraction history; 3) reports from the incident; 4) prison policies; 5) plaintiff's medical records; 6) video recording of the incident; and 7) declarations of defendants Everett and Williams.

**STATEMENT OF FACTS**

The court recounts the facts in the light most favorable to plaintiff. On August 28, 2023, plaintiff was an inmate at Bertie Correction Institution ("Bertie CI") and housed in the restrictive

housing unit. (Amend. Compl. (DE 11-1) at 3).[1] With his hands cuffed behind his back, plaintiff was escorted back to his cell after showering when he refused to reenter his cell. (Id. at 3-5). According to plaintiff, he feared for his personal safety from other inmates at Bertie CI and "stopped at the threshold of his cell in an attempt to . . . get his message across." (Id. at 5). In his verified amended complaint, plaintiff alleges that defendants Stocks, Everett, and Williams (collectively, "defendants") were with him throughout the escort, that he was struck in the back of the head without provocation, punched, kicked, tasered "numerous times," and repeatedly struck by defendants Stocks and Williams with batons. (Id. at 5-6).

According to plaintiff, he was eventually dragged to his cell, stripped of his clothing, and told by defendant Stocks that he would not receive medical treatment for his injuries. (Id. at 6). He denies ever receiving medical treatment in connection with the incident. (Id.) Plaintiff contends that he sustained various injuries during the incident, including severe facial swelling, inflamed and bruised arms, legs, elbows, shoulders, and head, swollen ribs, puncture wounds from the taser prongs, and trouble breathing. (Id. at 6-7).

But video recordings and medical records from the incident tell a somewhat different story.[2] Recordings provided by defendants in support of summary judgment show that defendant Stocks was escorting plaintiff when plaintiff exited his cell as the cell door was closed. (Incident Recording (DE 43-2) at 9:53:32). Defendant Stocks radioed for assistance and issued repeated

---

[1] Throughout this order, page numbers in citations to documents in the record are to the page number specified in the footer of the document supplied by the court's case management/electronic case filing (CM/ECF) system for the docket entry (DE) and not the page number, if any, showing on the face of the underlying document.

[2] These video recordings were filed manually with the clerk of court (DE 43-2. DE 54-9). Citations to the video correspond to the timestamp appearing on the recording.

commands for plaintiff to return to his cell. (Decl. of Brandon Stocks (DE 43-1) at 3). Defendants Everett and Williams arrived on scene roughly one minute later. (DE 43-2 at 9:54:23). In the video recording, plaintiff continued resisting defendants' commands and efforts to return him to his cell. (Id.). After plaintiff slipped out of defendants Stocks and Everett's grip, defendant Everett attempted to hold plaintiff against a security cage while plaintiff struggled to break free. (Id. at 9:54:33). Defendant Stocks then applied a five-second drive-stun with his taser to plaintiff's right shoulder to regain his compliance. (DE 43-1 at 3). When the first stun was ineffective, defendant Stocks applied a second five-second drive-stun to the same location. (Id.). This also proved ineffective. (Id.). After defendants struggled with plaintiff against the cages for roughly 20 seconds, plaintiff was brought to the ground by defendant Everett. (DE 43-2 at 9:54:53).

Defendants regained control of plaintiff on the ground and then attempted to drag him back to his cell. (Id. at 9:55:27). When plaintiff arrived at his cell door, he began shifting his body weight and kicking in another attempt to break free from the officers' grip. (Id. at 9:55:40). About two minutes later, plaintiff was brought back to his feet, and officer Everett again attempted to return plaintiff to his cell. (Id. at 9:57:42). Once again, plaintiff resumed struggling when he reached his cell door. (Id. at 9:57:43).

Plaintiff broke free from defendants' grip a third time and began running toward the restrictive housing unit's entrance. (Id. at 9:57:58). While defendant Everett attempted to bring plaintiff to the ground from behind, defendant Williams applied a single baton strike to the rear of plaintiff's thigh. (Id. at 9:58:02). At the same time, defendant Stocks began reaching for his

baton. (Id.). Roughly two seconds later, defendant Everett had plaintiff pinned to the ground and defendant Williams was standing next to plaintiff with her baton drawn. (Id. at 9:58:04). By this time, plaintiff was no longer struggling against defendant Everett. (Id.).

While plaintiff was still pinned to the ground, defendant Stocks struck the back of plaintiff's thigh with his baton. (Id. at 9:58:05). He then took a few steps, adjusted his hat, circled back, and struck plaintiff's thigh again. (Id. at 9:58:08). He then took a few more steps, circled back, and struck plaintiff's thigh a third time. (Id. at 9:58:11). After the third strike, defendant Stocks returned his baton to his belt. (Id. at 9:58:15). Between defendant Stocks' second and third strikes, defendant Everett readjusted his hold on plaintiff, appearing to ease his pressure on plaintiff's back. (Id. at 9:58:11). During the strikes, defendant Williams continued standing next to plaintiff with her baton in hand. (Id. at 9:58:05-15). Defendants Everett and Williams did not visibly react to defendant Stocks striking plaintiff with his baton. In their written declarations describing the incident, defendants Everett and Williams state the baton strikes occurred too quickly for them to intervene. (Decl. of Lekisha Williams (DE 54-10) at 2; Decl. of DeBriant Everett (DE 54-11) at 2).

Roughly 20 seconds later, three additional correctional officers arrived on the scene. (DE 43-2 at 9:58:35). At the instruction of the officer in charge, plaintiff, still on the ground, was readjusted from his stomach to his side. (Id. at 9:58:40). With the help of these additional officers, plaintiff was returned to his feet. (Id. at 10:00:02). Plaintiff was held outside his cell while his belongings were removed from the cell. Plaintiff was then accompanied by defendant

Williams and two of the additional officers, including the officer in charge, from the restrictive housing unit. (Id. at 10:02:35).

Contrary to plaintiff's recollection of events in his verified amended complaint, at no point in the recording do defendants appear to strike plaintiff in the back of the head, punch him, or kick him. Plaintiff was struck only once with a baton by defendant Williams, while he was fleeing the officers. Additionally, plaintiff's recollection of being stripped and left in his cell by defendant Stocks, with instructions that he would not be receiving medical treatment, does not align with video recording of plaintiff being removed from the restrictive housing unit by different officers while fully clothed.

Plaintiff's medical records show that he had a telephone triage medical encounter that same night at approximately 11:26 p.m. (Clinical Encounter Records (DE 57) at 12). Plaintiff was assessed for a lip abrasion and knot above his eye. (Id.). Plaintiff was issued non-aspirin, had ibuprofen ordered, and provided access to an icepack. (Id.). Given the time of day that the encounter occurred, plaintiff was instructed that an in-person use of force screening would need to be provided the next day. (Id.). Plaintiff was further instructed to return immediately if his condition worsened. (Id. at 13). A day later, plaintiff refused further medical assessment for the use of force. (Id. at 15).

## COURT'S DISCUSSION

### A. Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [the record] must be viewed in the light most favorable to the party opposing the motion.").

But "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (cleaned up). "When opposing parties

tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based upon speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90; see also Scott, 550 U.S. at 380.

B. Analysis

1. Section 1983 Claims

Defendants Everett and Williams raise the affirmative defense of qualified immunity. Qualified immunity protects government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Iko v. Shreve, 535 F.3d 225, 237 (4th Cir. 2008). The qualified immunity analysis proceeds in two steps, which the court "may address in whichever sequence will best facilitate the fair and efficient disposition of the case." Pfaller v. Amonette, 55 F.4th 436, 444 (4th Cir. 2022) (cleaned up). First, plaintiff must establish the violation of a constitutional right. Id. Second, defendants bear the burden of showing the right at issue was not "clearly established" at the time of the alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 232 (2009). The court begins with the first step. Because

plaintiff's claims against defendant Stocks and defendants Everett and Williams arise out of the same conduct, these claims are considered together.[3]

a. Constitutional Violation Prong of Qualified Immunity

i. Excessive Force

As to claims for excessive use of force, the Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" which constitutes cruel and unusual punishment. Whitley v. Albers, 475 U.S. 312, 319 (1986). The excessive force inquiry has an objective prong and a subjective prong. Under the objective prong, the inmate must establish that the force used was "nontrivial" or more than "de minimis." Wilkins v. Gaddy, 559 U.S. 34, 39 (2010) (per curiam).

To satisfy the subjective prong, the inmate must show a prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991). In an excessive force case, "the state of mind required is wantonness in the infliction of pain." Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019) (cleaned up). The relevant inquiry for the subjective prong is "whether force was applied in a good faith effort to maintain or restore discipline," or "maliciously" and "for the very purpose of causing harm." Whitley, 475 U.S. at 320-21; Brooks, 924 F.3d at 113. "The question is not whether a reasonable officer could have used force to maintain discipline, but whether these particular officers *did* use force for that reason." Brooks, 924 F.3d at 113 (emphasis in original).

In analyzing the subjective prong, the court considers four factors "from

[3] In his memorandum supporting summary judgment, defendant Stocks did not raise the affirmative defense of qualified immunity and only argued entitlement to summary judgment on plaintiff's excessive force claim under the Eighth Amendment.

which additional inferences may be drawn as to the officers' motives." Id. at 116. These factors are: "1) the need for the application of force; 2) the relationship between the need and the amount of force that was used; 3) the extent of any reasonably perceived threat that the application of force was intended to quell; and 4) any efforts made to temper the severity of a forceful response." Iko, 535 F.3d at 239; see also Whitley, 475 U.S. at 321.

Under the objective prong, tasering plaintiff, bringing him to the ground twice, and striking plaintiff with a baton are nontrivial uses of force. See Alexander v. Connor, 105 F.4th 174, 177, 182 (4th Cir. 2024). Turning to the subjective prong, there was a need for application of force to maintain or restore discipline, given that plaintiff refused to return to his cell, resisted and repeatedly broke free from correctional officers attempting to secure him, and began running toward the restrictive housing unit's entrance. But video recording of the incident shows that plaintiff stopped resisting defendants after being brought down a second time by defendant Everett. At that point, plaintiff was no longer an imminent threat to the officers or others.

Still, while defendant Everett held plaintiff securely on the ground, and defendant Williams looked on with her baton drawn, defendant Stocks struck plaintiff three times to the back of the thigh with his baton. The first strike occurred within seconds of the takedown. The second two strikes occurred several seconds later, after defendant Stocks stood, circled, and returned to plaintiff. Plaintiff did not appear to be moving or struggling during any of the strikes, and defendants Everett and Williams both took on more relaxed postures while the strikes were ongoing. According to defendant Stocks, he "delivered three baton strikes to Plaintiff's right thigh in an effort to secure control and restore order within the unit." (DE 43-1 at 4). This was

necessary, defendant Stocks argues, "[g]iven that two prior Taser deployments had failed to gain compliance," and in anticipation of "continued or escalated resistance based on Plaintiff's prior conduct." (Id.).

The baton strikes may have been justified if plaintiff was resisting lawful orders when defendant Stocks struck him, or if he otherwise posed a threat to the officers. See Brooks, 924 F.3d at 113. But plaintiff specifically attests that he was no longer a threat to defendants, (DE 11-1 at 7), and it is a reasonable inference to draw in his favor that he was not resisting or otherwise preparing to resist the officers when defendant Stocks elected to strike him with a baton. See Dean v. Jones, 984 F.3d 295, 305 (4th Cir. 2021) (requiring second-by-second analysis to determine whether use of force was justified because "the justification for using protective force expires at the very moment a threat is neutralized"). If plaintiff was not resisting at the time when defendant Stocks struck him three times with a baton, a reasonable jury could find that defendant Stocks' use of force was designed to "wantonly punish" plaintiff for resisting the officers, as opposed to a good-faith effort to maintain or restore discipline. See Brooks, 924 F.3d at 114.

The court reaches the same conclusion under the Whitley factors as to defendant Stocks' use of force. While some force was justified here for the reasons explained above, three baton strikes against an inmate who is not resisting may be disproportionate to that need. See Brooks, 924 F.3d at 116–17. A reasonable juror could be persuaded that plaintiff did not present an imminent threat to the officers after he was secured on the ground and no longer resisting. Finally, while defendant Stocks did use several other methods to restrain plaintiff before resorting to baton blows, which could be construed as an effort to temper the severity of a forceful response, that

would not preclude a finding of excessive force under Whitley if he struck plaintiff with a baton three times when plaintiff posed no further threat of harm.

Defendant Stocks notes that plaintiff's limited injuries from the baton strikes support finding that his use of force could not have been excessive. But, as defendant Stocks acknowledges, the extent of plaintiff's injuries are not dispositive, and given the analysis set forth above, the court is constrained to find that a reasonable jury could find the use of force was excessive notwithstanding the minor injuries. See Wilkins, 559 U.S. at 37–39 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.").

But the same is not true for defendants Everett and Williams. Video recording of the incident shows defendant Everett bringing plaintiff to the ground twice, the first time after plaintiff continued resisting control after twice being tasered, and the second time while running toward the restrictive housing unit's entrance. As plaintiff was running toward the entrance of the unit, defendant Williams also struck plaintiff one time to the back of the thigh with her baton. After plaintiff was brought down a second time, he stopped resisting. Neither defendant Everett, nor defendant Williams, used nontrivial force against plaintiff after the second takedown. To the contrary, defendant Everett simply held plaintiff in place until additional officers arrived, and defendant Williams stood by with her baton drawn. Under these circumstances, as confirmed by the Whitley factors, the force used by defendants Everett and Williams "was applied in a good faith effort to maintain or restore discipline." See Whitley, 475 U.S. at 320. Therefore, defendants Everett and Williams are entitled to summary judgment on this claim.

ii. Deliberate Indifference

Next the court considers plaintiff's deliberate indifference claim under the Eighth Amendment. "[D]eliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014). To state a claim for deliberate indifference to serious medical needs, a plaintiff must allege that he is suffering from a serious medical need, and that prison officials knew of and disregarded that condition. Iko, 535 F.3d at 241; see also Farmer v. Brennan, 511 U.S. 825, 837 (1994). Under the first prong, "a prisoner must establish . . . a serious or significant physical or emotional injury," Danser v. Stansberry, 772 F.3d 340, 346 (4th Cir. 2014), or that "he was incarcerated under conditions posing a substantial risk of serious harm." Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015).

The "state of mind must be at least deliberate indifference to the inmate's health or safety." Ford v. Hooks, 108 F.4th 224, 230 (4th Cir. 2024). The deliberate indifference prong requires showing that a defendant knew of and disregarded an excessive risk to inmate health or safety. Farmer, 511 U.S. at 837–38; Danser, 772 F.3d at 347. A plaintiff may establish deliberate indifference by producing direct evidence showing the prison official had actual knowledge of the risk and failed to protect him. Farmer, 511 U.S. at 842–43. The official "must also have recognized that his actions were insufficient to mitigate the risk of harm to the inmate." Iko, 535 F.3d at 241. That said, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer, 511 U.S. at 844.

Plaintiff's deliberate indifference claim is based on two primary assertions, both of which are contradicted by the record. First, plaintiff argues that defendants failed to remove the barbs left by the taser used against plaintiff during the incident. (DE 11-1 at 8). Second, plaintiff alleges he was denied medical treatment after the incident. According to plaintiff, after the incident, defendant Stocks stated, "I'm not calling medical and you will not be receiving any medical treatment." (Id. at 6). Plaintiff denies ever receiving medical treatment after the incident. (Id.).

The record indicates, however, that the taser was used against plaintiff in "drive-stun" mode. Unlike a deployment, where the taser cartridge is fired toward the target, a "drive-stun" simply entails activating the taser "while holding it against the target." (N.C. Dept. Pub. Safety, Use of Force Policy (DE 54-6 ) at 1). Thus, the barbs would not have lodged in plaintiff as in a downrange deployment. (See id.). Additionally, plaintiff was removed from the restrictive housing unit immediately after the incident and received a telephone triage medical encounter that same night. Because the incident occurred around 10:00 p.m., plaintiff was instructed that an in-person use of force screening would need to be provided the day after. The next day, plaintiff refused further medical evaluation.

When considering a motion for summary judgment, the court need not adopt plaintiff's telling of events to the extent his verified complaint is directly contradicted by the record. Scott, 550 U.S. at 380. On this record, even assuming plaintiff could satisfy the first prong of the deliberate indifference analysis, he cannot meet the second prong. See Farmer, 511 U.S. at 837–38. Plaintiff received medical treatment shortly after the incident and refused follow-up care the

next day. Plaintiff has not carried his burden of showing that defendants Everett and Williams "disregard[ed] an excessive risk to inmate health or safety" after the incident. Thus, these defendants are entitled to summary judgment on this claim.

iii. Failure to Protect

Next, the court turns to plaintiff's claim for failure to protect. "Bystander liability is premised on an officer's affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers." Johnson v. Robinette, 105 F.4th 99, 123 (4th Cir. 2024). "[A]n officer may be liable under § 1983, on a theory of bystander liability, if he: 1) knows that a fellow officer is violating an individual's constitutional rights; 2) has a reasonable opportunity to prevent the harm; and 3) chooses not to act." Randall v. Prince George's Cnty., 302 F.3d 188, 204 (4th Cir. 2002).

As detailed above, plaintiff stopped resisting defendants after being brought down a second time by defendant Everett. While defendant Everett held plaintiff securely on the ground and defendant Williams looked on, defendant Stocks struck plaintiff three times with a baton to the back of his thigh. Defendants Everett and Williams did not visibly react to defendant Stocks striking plaintiff with his baton. Neither do they contend that they tried to prevent defendant Stocks from striking plaintiff. Rather, both defendants state that the baton strikes occurred too quickly for them to intervene on plaintiff's behalf. (DE 54-10 at 2; DE 54-11 at 2).

The strikes occurred quickly, over a period of roughly nine seconds. Between each of the strikes, defendant Stocks took several steps, circled back toward plaintiff, and struck him again with his baton. Viewing these facts in a light most favorable to plaintiff, however, a reasonable

factfinder could determine that defendants Everett and Williams knew defendant Stocks was violating plaintiff's constitutional rights, had a reasonable opportunity to prevent the harm, and chose not to act. See Randall, 302 F.3d at 204.

In sum, the record presents genuine disputes of material fact as to plaintiff's claims for excessive use of force against defendant Stocks, and his claim for failure to protect from harm against defendants Everett and Williams. The court therefore proceeds to prong two of the qualified immunity analysis with respect to these claims. The court grants defendants Everett and Williams' motion for summary judgment as to plaintiff's deliberate indifference claim where plaintiff has failed to show a violation of his Eighth Amendment rights with respect to his medical treatment.

b. Clearly Established Prong of Qualified Immunity

Under the second prong of the qualified immunity analysis, officials' actions violate clearly established rights only if their unlawfulness is apparent under preexisting law. Iko, 535 F.3d at 237–38. Under this standard, officials must show only "the legal knowledge of an objectively reasonable official in similar circumstances at the time of the challenged conduct." Id. at 238. To determine whether the right in question was clearly established, the court looks to cases from the Supreme Court, the Fourth Circuit, or the highest court of the state in which the action arose. Owens ex rel. Owens v. Lott, 372 F.3d 267, 279-80 (4th Cir. 2004). Although an identical case is not required, "existing precedent must have placed the . . . constitutional question beyond debate." Kisela v. Hughes, 584 U.S. 100, 104 (2018).

Viewing the record in the light most favorable to plaintiff, it was clearly established at the time of the incident that officers cannot "maliciously use[] force against an inmate who has been subdued, even if force might have been justified to control the inmate only moments before." Dean, 984 F.3d at 310–11; see also Brooks, 924 F.3d at 114–17; Thompson v. Commonwealth of Va., 878 F.3d 89, 102–05 (4th Cir. 2017). In undertaking the clearly established analysis in this context, the court must assume defendant Stocks acted with malicious intent if plaintiff's evidence shows a genuine dispute on the issue. Dean, 984 F.3d at 310. Because the record presents genuine disputes of fact on whether defendant Stocks acted with the required malicious intent, defendants are not entitled to qualified immunity based on the clearly established prong at this stage of the proceedings.

Defendants Everett and Williams also must face trial under the doctrine of bystander liability. It has been clearly established in this circuit since at least 2017 that a corrections officer who observes violation of an inmate's constitutional rights and fails to intervene despite reasonable opportunity to do so generally is liable for the violation. See Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 417 (4th Cir. 2017). Here, plaintiff attests, and video recording confirms, that defendants Everett and Williams were present when defendant Stocks repeatedly struck plaintiff with a baton after he no longer posed a threat to officer safety. These defendants failed to intervene. Therefore, defendants Everett and Williams are not entitled to qualified immunity at this time.

Accordingly, plaintiff offers sufficient evidence to establish a genuine dispute of fact as to his Eighth Amendment excessive force claim against defendant Stocks and his bystander liability

claims against defendants Everett and Williams, and these defendants are not otherwise entitled to qualified immunity as to these claims. The court grants defendants' motions for summary judgment with respect to the remaining § 1983 claims based on qualified immunity.

1. North Carolina State Law Claims

Defendants Everett and Williams also raise the affirmative defense of public official immunity under North Carolina state law. Such immunity from suit arises "as long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption." Smith v. State, 289 N.C. 303, 331 (1976). Thus, "[p]ublic official immunity is unavailable to officers who violate clearly established rights because an officer acts with malice when he does that which a man of reasonable intelligence would know to be contrary to his duty." Caraway v. City of Pineville, 111 F.4th 369, 386 (4th Cir. 2024). The court considers each of plaintiff's state-law claims against defendants Everett and Williams in turn.

a. Intentional Infliction of Emotional Distress

Under North Carolina law, to allege intentional infliction of emotional distress, plaintiff must show: "1) extreme and outrageous conduct by the defendant, 2) which is intended to cause and does cause 3) severe emotional distress to another." Turner v. Thomas, 369 N.C. 419, 427 (2016) (cleaned up). "[E]xtreme and outrageous conduct is that which exceeds all bounds of decency tolerated by society and is regarded as atrocious, and utterly intolerable in a civilized community." Id. (cleaned up). The second element requires showing either intent to cause severe emotional distress or that defendants acted with "reckless indifference to the likelihood that

they will cause severe emotional distress." Dickens v. Puryear, 302 N.C. 437, 452 (1981). Under the third element, "the term severe emotional distress means any . . . type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." Waddle v. Sparks, 331 N.C. 73, 83 (1992).

Defendants Everett and Williams have satisfied their burden of identifying portions of the record that demonstrate the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323; (DE 55 at 21-24). The burden therefore shifts to plaintiff to "come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 586–87. Among other things, plaintiff has not shown "severe emotional distress" resulting from defendants' conduct. See Waddle, 331 N.C. at 83. Accordingly, plaintiff has not established a triable issue of fact and defendants Everett and Williams are entitled to judgment as a matter of law. See Anderson, 477 U.S. at 247–48.

b. Dereliction of Duty and Abuse of Power

Next, the court considers plaintiff's dereliction of duty and abuse of power claims. Dereliction of duty is a criminal offense in North Carolina. Under § 14-230 of the North Carolina General Statues: "If any . . . official of any of the State institutions . . . shall willfully omit, neglect or refuse to discharge any of the duties of his office, for default whereof it is not elsewhere provided that he shall be indicted, he shall be guilty of a Class 1 misdemeanor." N.C. Gen. Stat. § 14-230. In North Carolina, "a statute may authorize a private right of action either explicitly or implicitly," typically, however, "a statute allows for a private cause of action only where the legislature has

expressly provided a private cause of action within the statute." Sykes v. Health Netwk. Sols., Inc., 372 N.C. 326, 338 (2019).

The Supreme Court of North Carolina has also recognized that governmental entities "owe[] no particular duty to any individual claimant" and "cannot be held liable for negligence for a failure to carry out [their] statutory duties." Stone v. N.C. Dept. of Labor, 347 N.C. 473, 482 (1998). "Absent a duty, there can be no liability." Id.

Defendants Everett and Williams argue "there is nothing in North Carolina law to suggest . . . a civil cause of action" for dereliction of duty or abuse of power. (DE 55 at 25). Neither has the court identified North Carolina case law permitting a private citizen to pursue these claims against state officials. Thus, defendants Everett and Williams have satisfied their burden of identifying portions of the record that demonstrate the absence of a genuine issue of material fact on these claims. See Celotex, 477 U.S. at 323; (DE 55 at 24-26). Plaintiff has not responded to defendants' motion for summary judgment with "specific facts showing that there is a genuine issue for trial" on these claims. Matsushita, 475 U.S. at 586–87. Accordingly, defendants Everett and Williams are entitled to judgment as a matter of law on plaintiff's dereliction of duty and abuse of power claims.

2. Motions to Seal

Next the court considers defendants' unopposed motions to seal. The court has reviewed and considered the motions under the governing standard. Doe v. Pub. Citizen, 749 F.3d 246, 266–67, 272 (4th Cir. 2014). Plaintiff does not oppose sealing medical records filed by defendant Stocks in support of summary judgment. Neither does plaintiff oppose sealing portions of the

supporting memorandum, statement of material facts, and medical records filed by defendants Everett and Williams in support of summary judgment. The public has received adequate notice of the motions to seal. Plaintiff's interest in the confidentiality of his medical records requires sealing in this case. Therefore, defendant Stocks' unopposed motion to seal (DE 47) is granted, and the clerk shall maintain docket entries 45-1 and 45-2 under seal. Defendant Everett and Williams' unopposed motion to seal (DE 58) is likewise granted, and the clerk shall maintain docket entries 55, 56, and 57 under seal.

3. Claims against Defendant Jane/John Doe

On November 26, 2024, the court directed plaintiff to identify defendant Jane/John Doe by the deadline for amending pleadings in the case management order and warned plaintiff that the claims against defendant Jane/John Doe would be dismissed if he failed to do so. (DE 14 at 2); see also Attkisson v. Holder, 925 F.3d 606, 627–28 (4th Cir. 2019). Because plaintiff did not identify this defendant by the deadline, plaintiff's claims against defendant Jane/John Doe are dismissed.

## CONCLUSION

Based on the foregoing:

1) Defendant Stocks' motion for summary judgment (DE 40) is DENIED;

2) Defendants Everett and Williams' motion for summary judgment (DE 51) is:

    a. DENIED on plaintiff's bystander liability claim; and

    b. GRANTED on all other claims.

3) Defendants' unopposed motions to seal (DE 47, 58) are GRANTED. The clerk is DIRECTED to maintain docket entries 45-1, 45-2, 55, 56, and 57 under seal.

4) Plaintiff's claims against defendant Jane/John Doe are DISMISSED without prejudice.

Before entering a trial scheduling order, the court requires that the parties participate in a court-hosted settlement conference. Accordingly, under Local Alternative Dispute Rule 101.1, EDNC, this case is REFERRED to United States Magistrate Judge Kimberly Swank for a court-hosted settlement conference, for the purpose of resolving all remaining issues in dispute. The magistrate judge will notify the parties how he wishes to proceed. In the event the parties do not reach a resolution to this action, further order regarding trial planning and scheduling will follow.

SO ORDERED, this the 25th day of September, 2026.

LOUISE W. FLANAGAN
United States District Judge